

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

NORFOLK DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 2:14cr49 |
| ) | |
| DAVID R. FLYNN, ) | |
| ) | |
| Defendant. ) | |

## STATEMENT OF FACTS

The parties stipulate that the allegations in the criminal information and the following facts are true and correct, and that had the matter gone to trial, the United States would have proven them beyond a reasonable doubt:

## INTRODUCTION

1. Defendant DAVID R. FLYNN (FLYNN) was an attorney licensed to practice law in the Commonwealth of Virginia. FLYNN practiced law with an entity called David R. Flynn, PLLC located at 5267 Greenwich Road, Suite 101, Virginia Beach, Virginia. In his law practice, FLYNN, or others at his direction, regularly served as a settlement agent to close real estate transactions.

2. FLYNN also owned and controlled Assured Title of Virginia, LLC ("Assured Title") a title insurance company also located at 5267 Greenwich Road, Suite 101, Virginia Beach, Virginia. Assured Title is a title insurance agent that entered into an agreement with First American Title Insurance Company ("First American") for the purpose of selling title insurance.



3.      As an attorney licensed to practice law in the Commonwealth of Virginia, FLYNN's conduct was governed by the Virginia Rules of Professional Conduct as well as the Virginia Consumer Real Estate Protection Act (CRESPA) governing the duties of real estate settlement agents. These rules and statutes imposed on FLYNN a duty to hold property or monies in safekeeping for real estate transactions through the use of escrow accounts, to maintain appropriate records for those accounts, and to refrain from converting those funds to his personal use.

4.      In his capacity as an attorney, FLYNN opened and controlled two escrow accounts. First, FLYNN controlled real estate escrow account number xxxxxxxxx7361 at Wells Fargo Bank in the name of David R. Flynn, PPLC. Second, FLYNN also opened and controlled escrow account number xxxxxx5215 at Towne Bank in the name of David R. Flynn PLLC.

5.      From in or about September 13, 2013 through in or about December 31, 2013, the exact dates being unknown, in the Eastern District of Virginia and elsewhere, defendant DAVID R. FLYNN, with the intent to defraud devised and executed a scheme and artifice to defraud and obtain money and property by materially false pretenses, representations and promises. This scheme and artifice operated in substance as follows:

## THE OBJECT OF THE SCHEME AND ARTIFICE TO DEFRAUD

6.      The object of the scheme and artifice to defraud was for FLYNN to wrongfully obtain and misappropriate money and to retain misappropriated money and property by:

(a) Holding himself out to the public as an honest attorney and settlement agent capable of closing real estate transactions; and

(b) Unlawfully converting funds wired into his escrow accounts for real estate closings to his own personal use.



## THE EXECUTION OF THE SCHEME AND ARTIFICE TO DEFRAUD

7. FLYNN executed his scheme and artifice to defraud by receiving substantial sums of money to complete real estate transactions into his escrow accounts and then misappropriating those funds for his own personal benefit.

8. More specifically, as discussed below, numerous individuals used David R. Flynn, PLLC to close real estate transactions. These individuals obtained financing from various lenders to purchase the properties, and the lenders wired thousands of dollars into escrow accounts that FLYNN controlled. In each instance, David R. Flynn, PLLC received all of the requisite funds necessary to close the real estate transaction, and individuals at FLYNN's direction conducted the closing where the parties to the transactions executed all relevant documentation. The parties to the transaction believed that David R. Flynn, PLLC would disburse all payments in accordance with the information contained on the HUD-1 settlement statement within three days of the closing. However, when agents of David R. Flynn, PLLC attempted to disburse funds in accordance with the HUD-1, the payoffs were returned due to insufficient funds because FLYNN had misappropriated the funds from his escrow accounts.

### Mason to Codington

9. On or about September 13, 2013, David R. Flynn, PLLC closed the sale of a home located in Virginia Beach from Jessica Mason to Michael and Mackenzie Codington. The Codingtons financed the purchase of this home, in part, by obtaining a loan from Southern Trust Mortgage. To facilitate the transaction, Southern Trust Mortgage wired $337,661.02 into FLYNN's real estate escrow account at Wells Fargo, and the Codingtons also brought a substantial sum of additional funds to closing that were deposited into the same escrow account.

3



10. The transaction closed. After the closing, Mason's first mortgage in the amount of $390,978.24 was not paid off. Instead, FLYNN misappropriated funds held in his real estate escrow account for his own purposes. After learning that her first mortgage had not been paid off, Mason made at least one mortgage payment to prevent damage to her credit.

### Knapp Refinance

11. On or about October 9, 2013, David R. Flynn, PLLC closed the refinance of real property located in Haymarket, Virginia by its owner, Deborah Knapp. To facilitate the transaction, CMG Mortgage, Inc. wired 351,162.95 into FLYNN's real estate escrow account at Wells Fargo.

12. The transaction closed. After the closing, Knapp's first mortgage in the amount of $315,079.11 was not paid off. Instead, FLYNN misappropriated funds held in his real estate escrow account for his own purposes.

### Miemczewski Refinance

13. On or about October 23, 2013, David R. Flynn, PPLC closed the refinance of real property located in Virginia Beach, Virginia by Daniel and Cheryl Miemczewski. To facilitate the transaction, Fifth Third Mortgage Company wired $194,396.12 into FLYNN's real estate escrow account at Wells Fargo.

14. The transaction closed. After the closing, the Miemczewski's first mortgage in the amount of $188,268.06 was not paid off. Instead, FLYNN misappropriated funds held in his real estate escrow account for his own purposes.

### Spraberry Refinance

15. On or about October 23, 2013, David R. Flynn, PPLC closed the refinance of real property located in Virginia Beach, Virginia by Carlton W. and Cynthia R. Spraberry. To



facilitate the transaction, Stellar One Bank wired $330,063.02 into FLYNN's real estate escrow account at Wells Fargo.

16. The transaction closed. After the closing, the Spraberry's first mortgage in the amount of $282,495.58 was not paid off. Instead, FLYNN misappropriated funds held in his real estate escrow account for his own purposes. After learning that their first mortgage had not been paid and was still outstanding, the Spraberrys made several payments on the unpaid mortgage to prevent damage to their credit.

### Crews Refinance

17. On or about October 25, 2013, David R. Flynn, PPLC closed the refinance of real property located in Norfolk, Virginia by Derrick Crews. To facilitate the transaction, Southern Trust Mortgage, LLC wired $107,063.42 into FLYNN's real estate escrow account at Wells Fargo.

18. The transaction closed. After the closing, Crews's first mortgage in the amount of $105,033.66 was not paid off. Instead, FLYNN misappropriated funds held in his real estate escrow account for his own purposes.

### Payne to Jackson

19. On or about October 28, 2013, David R. Flynn, PLLC closed the sale of a home located in Virginia Beach from Sharon L. Payne to Dwight Ambrose Jackson. Mr. Jackson obtained a loan from Loan Simple, Inc. to purchase this property. To facilitate the transaction, Loan Simple, Inc. wired $123,300.06 into FLYNN's real estate escrow account at Wells Fargo.

20. The transaction closed. After the closing, a judgment in the amount of $10,190 that was specifically listed on the HUD-1 settlement statement was never paid. Instead, FLYNN misappropriated funds held in his real estate escrow account for his own purposes.



### McManus Refinance

21.     On or about October 29, 2013, David R. Flynn, PPLC closed the refinance of real property located in Suffolk, Virginia by Paul and Kimberly McManus. To facilitate the transaction, Fifth Third Mortgage Company wired $282,837.50 into FLYNN's real estate escrow account at Wells Fargo.

22.     The transaction closed. After the closing, the McManus's first mortgage in the amount of $271,258.29 was not paid off. Instead, FLYNN misappropriated funds held in his real estate escrow account for his own purposes.

### Hollis to Masters

23.     On or about October 31, 2013, David R. Flynn, PLLC closed the sale of a home located in Portsmouth, Virginia from Arnold L. and Barbara E. Hollis to Gerald D. and Donna S. Masters. The Masters did not finance the purchase of this property, but deposited $138,112.46 into FLYNN's real estate escrow account at Wells Fargo in preparation for closing.

24.     The transaction closed. After the closing, the Hollis's first mortgage in the amount of $116,949.91 was not paid off. Instead, FLYNN misappropriated funds held in his real estate escrow account for his own purposes. To avoid detection, FLYNN used his law firm's operating account to make a payment of $915.53 towards Hollis's unpaid mortgage.

### Dutko Refinance

25.     On or about October 31, 2013, David R. Flynn, PPLC closed the refinance of real property located in Virginia Beach, Virginia by John J. and Lisa K. Dutko. To facilitate the transaction, Chartway Federal Credit Union wired $250,000.00 into FLYNN's real estate escrow account at Wells Fargo.

26. The transaction closed. After the closing, the Dutko's first mortgage in the amount of $98,293.45 was not paid off. Instead, FLYNN misappropriated funds held in his real estate escrow account for his own purposes.

<u>Carter Refinance</u>

27. On or about November 1, 2013, David R. Flynn, PPLC closed the refinance of real property located in Virginia Beach, Virginia by Mark S. Carter. To facilitate the transaction, Frontline Financial, LLC wired $138,832.58 into FLYNN's real estate escrow account at Wells Fargo.

28. The transaction closed. After the closing, Carter's first mortgage in the amount of $134,491.44 was not paid off. Instead, FLYNN misappropriated funds held in his real estate escrow account for his own purposes.

<u>Moyers to Ferguson</u>

29. On or about November 14, 2013, David R. Flynn, PLLC closed the sale of a home located in Moneta, Virginia from Robert and Emma Moyers to Robert G. Ferguson. Ferguson financed his purchase of the property with a loan from Simon Towne Mortgage. To facilitate the transaction, Simon Towne Mortgage wired $248,714.57 into FLYNN's real estate escrow account at Wells Fargo.

30. The transaction closed. After the closing, the Moyers's first mortgage in the amount of $174,140.03 was not paid off, and the Moyers's equity proceeds check bounced due to insufficient funds. These obligations were not satisfied because FLYNN had misappropriated funds held in his real estate escrow account for his own purposes.

31. On or about November 15, 2013, in the Eastern District of Virginia and elsewhere, for the purpose of executing and attempting to execute above-described scheme and



artifice to defraud, defendant DAVID R. FLYNN, knowingly caused to be sent and delivered by United States Mail, the following matter: Wells Fargo Account Number xxxxxxxxx7361, Check Number 88416, written to Robert and Emma Moyers in the amount of $26,406.81 representing the equity proceeds from the sale of their home to Robert G. Ferguson. After receiving this check in the mail, the Moyers attempted to cash it, but were unable to do so due to insufficient funds in FLYNN's real estate escrow account.

### Walbert Refinance

32. On or about November 26, 2013, David R. Flynn, PPLC closed the refinance of real property located in Norfolk, Virginia by Cassandra A. Walbert. To facilitate the transaction, Navy Federal Credit Union wired $191,045.71 into FLYNN's escrow account at Towne Bank.

33. The transaction closed. After the closing, Walbert's first mortgage in the amount of $109,797.00 and second mortgage in the amount of $52,829.00 were not paid off. Walbert also did not receive $26,124.54 in equity proceeds from the refinance. Indeed, David R. Flynn, PPLC failed to disburse and pay any of the expenses of the closing outlined on the HUD-1 settlement statement. Instead, FLYNN misappropriated funds held in his real estate escrow account for his own purposes. Specifically, the same day he received the funds into his escrow account, FLYNN wired $72,345.96 to a Bank of America account controlled by a company FLYNN created to misappropriate funds from his escrow account.

34. After learning that her mortgages had not been paid off, Walbert made several payments on the unpaid mortgages to prevent damage to her credit.

35. Throughout this time period, FLYNN misappropriated funds from his escrow accounts. For example, on September 30, 2013, FLYNN transferred $41,113.43 from his Wells Fargo escrow account to pay his personal American Express bill. From October 29, 2013



through November 19, 2013, FLYNN made six cash withdrawals from his Wells Fargo escrow account totaling $126,192.59. On November 21, 2013, FLYNN first transferred $27,275.35 from his Wells Fargo escrow account to Assured Title's operating account at Towne Bank, and then transferred $23,517.05 to a friend. FLYNN used a substantial portion of the misappropriated funds to cover existing problems with his Wells Fargo escrow account. FLYNN's problems with his escrow accounts dated back to 2008. FLYNN also stole funds from his escrow accounts to travel to Costa Rica, Miami and the Atlantis Hotel in the Bahamas. On at least one occasion, FLYNN chartered a private plane to travel to his tropical destination. FLYNN also used stolen funds to pay for friends to join him on his vacations.

36. Ultimately, FLYNN returned to the United States and thereafter confessed to federal agents that he had misappropriated funds from his escrow accounts.

37. As a result from FLYNN's fraudulent conduct, victims suffered at least $2,323,064.86 in losses.

The defendant acknowledges that the foregoing statement of facts does not describe all of his conduct relating to the offenses charged in this matter.

Dana J. Boente
United States Attorney

By: *Melissa E. O'Boyle*
Melissa E. O'Boyle
Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, DAVID R. FLYNN, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
DAVID R. FLYNN

I am DAVID R. FLYNN's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Randall J. Leeman, Jr. Esq.
Counsel for Defendant