IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA,

v.                                    Criminal No.: 2:14cr00049

DAVID R. FLYNN,

Defendant.

## POSITION OF THE DEFENDANT ON SENTENCING

COMES NOW the Defendant, David R. Flynn, by counsel, in accordance with Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.2 of the Sentencing Guidelines and Policy Statements as well as this Court's Sentencing Order, and hereby represents that the Defendant has reviewed the Probation Office's Pre-Sentence Report and sets forth the following as his position on sentencing:

## OBJECTIONS TO THE PRE-SENTENCE REPORT

Mr. Flynn, through counsel, has previously offered the following objections to the Pre-Sentence Report.  The Court should note that some of these objections affect the sentencing guidelines calculation.

1.      Mr. Flynn objects to ¶12 and the information contained therein to the extent that Mr. Flynn has no recollection of these transactions.  For this reason, Mr. Flynn cannot make any representations at this time as to whether he conducted these transactions or whether any other person conducted these transactions with his knowledge or consent.  For the same reasons, Mr. Flynn objects to the notation in ¶ 24 indicating that the date of earliest relevant conduct is January 2013.  Mr. Flynn avers

1

that, consistent with the Statement of Facts, the earliest date of relevant conduct should be September 2013.

2.      Mr. Flynn objects to ¶27 insofar as the calculation of his Base Offense Level includes a two-point sophisticated means enhancement pursuant to §2B1.1(b)(10)(c). Application Note 9 to §2B1.1(b)(10) indicates that for this enhancement to apply either the execution or concealment of the offense must involve "*especially complex*" or "*especially intricate*" conduct on the part of the defendant.  This is certainly not the case with respect to Mr. Flynn's conduct.  Mr. Flynn simply took money from his firm's escrow account—plain and simple theft. Obviously, theses funds came to Mr. Flynn's business by virtue of his status as an attorney and the fact that he held himself out to the public at large as a person with special skill and experience in the field of real estate transactions.  Mr. Flynn, however, has already been assessed a two-point increase for abuse of a position of public trust.  Therefore, to the extent that Mr. Flynn's standing as an attorney engaged in these types of transactions would bring him within the scope of the sophisticated means enhancement, he should not receive both two-point enhancements.

3.      Pursuant to Mr. Flynn's objections to ¶12 and ¶24 noted above, he objects to being assessed one criminal history point for his August 8, 2003, DUI conviction as set forth in ¶40. Mr. Flynn believes the earliest date of relevant conduct should be September 2013, which would place this conviction outside of the ten-year range for assessing criminal history points pursuant to §4A1.2(e).

2

4.      Mr. Flynn objects to ¶¶ 42 and 43 insofar as a Criminal History Category of II substantially over-represents the seriousness of his criminal history and the likelihood that he will commit future crimes.  Mr. Flynn's criminal record consists solely of two DUI offenses, one of which is nearly 14 years old while the other is over eight years old.  Neither of these offenses involved any aggravating circumstances such as an accident or injury and Mr. Flynn has had no other contact with the law until the offense for which he is currently pending sentencing.

## SECTION 3553 FACTORS

As the Supreme Court has long recognized, "it has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996).  With the United States Sentencing Guidelines now rendered "advisory only," *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007), a district court has substantial discretion in fashioning a sentence appropriate to the individual circumstances of the defendant and the unique facts of the offense. While the Court must consider the guideline range in a case, "the Guidelines are not the only consideration." *Gall v. United States*, 128 S. Ct. 586, 597 (2007). See *Kimbrough*, 128 S. Ct. at 564 ("the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence").
Indeed, as mandated by Congress, the fundamental principle of sentencing is that a court "*shall impose a sentence sufficient, but not greater than necessary*" to meet

3

specified sentencing goals, including the goal of just punishment.  18 U.S.C. § 3553.  In determining the minimally sufficient sentence, §3553 directs sentencing courts to consider the following factors:

(1)     the nature and circumstances of the offense and the history and characteristics of Mr. Flynn;

(2)     the need for the sentence imposed;

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of Mr. Flynn; and

(D)     to provide Mr. Flynn with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the kinds of sentences and the sentencing range established for [the offense];

(5)     any pertinent policy issued by the Sentencing Commission;

(6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. Section 3553.

In addition, a district court "may not presume that the Guidelines range is reasonable," and instead "must make an individualized assessment based on the facts

4

presented." *Gall*, 128 S. Ct. at 597.  Moreover, the Supreme Court has specifically ruled that, in balancing the §3553(a) factors, a judge may determine that, "in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing." *Kimbrough*, 128 S. Ct. at 564. *See Rita v. United States*, 127 S. Ct. 2456, 2465 (2007) (a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect §3553(a) considerations, or [that] the case warrants a different sentence regardless.")

Other statutes also give the district court direction in sentencing. Under 18 U.S.C. §3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to recognize that imprisonment is *not* an appropriate means of promoting correction and rehabilitation (emphasis added). In sum, in every case, a sentencing court must consider *all* of the § 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing.

## Nature and Circumstances of the Offense

Mr. Flynn pled guilty to a criminal information charging him with one count of Mail Fraud in violation of 18 U.S.C. § 1341 and one count of Unlawful Monetary Transactions in violation of 18 U.S.C. § 1957.  Mr. Flynn misappropriated funds from his law firm's escrow account.  As the result of Mr. Flynn's conduct, victims in this case suffered a loss of approximately 2.3 million dollars.  The facts and circumstances of these offenses

5

are fully set forth in the Pre-Sentence Report and Mr. Flynn agrees that they are accurate.

The Statement of Facts focuses primarily on a period from September 13, 2013 to December 31, 2013. During that time, Mr. Flynn withdrew over $200,000.00 from his firm's escrow account and he used that money to fund trips to Florida, Costa Rica, and the Bahamas.  Mr. Flynn is not making excuses for his conduct, but the Court needs to know the circumstances surrounding his actions.

The facts as set forth in the Pre-Sentence Report imply that Mr. Flynn was stealing from his law firm's escrow account in order to fund a lavish lifestyle. In reality, that was simply not the case.  Mr. Flynn had invested heavily in a number of real estate and business ventures and the collapse of the real estate market and other factors such as unscrupulous business partners left Mr. Flynn in financial ruin.  Prior to the fall of 2013, Mr. Flynn certainly did misappropriate funds from his firm's escrow account but he used those funds primarily to keep himself and his law firm afloat and his staff employed.

Mr. Flynn would tell the court that although he certainly benefited financially from his actions, he was not using those funds to buy houses or cars or take vacations. Quite the contrary, Mr. Flynn was broke and grasping at straws.  As he fell deeper and deeper into debt, his alcoholism increasingly took control of him and his life spiraled totally out of control.

By the fall of 2013, Mr. Flynn was completely consumed by his alcohol addiction and his world was collapsing around him.  In addition to the significant amount of debt

he was in from his numerous failed business ventures and investments, he had discovered the true extent of just how far his firm's escrow account was out of balance. After learning that his firm's escrow account was millions of dollars in the red, Mr. Flynn decided to walk away and end his life.

In Mr. Flynn's words, he was out of his mind and there is no doubt that he was suicidal and that when he left Virginia for the last time he never intended to return. Upon learning of the federal investigation, however, Mr. Flynn chose to stop running and face the consequences of his actions. Credit must also be given to FBI Special Agent Collins as she talked Mr. Flynn of the ledge. Mr. Flynn returned to Virginia and immediately began assisting federal agents in the investigation of his own wrongdoing.

## History and Characteristics of Mr. Flynn

As the Court knows, Mr. Flynn was a licensed attorney who practiced in the Hampton Roads community for a number of years. Obviously, as a result of this investigation, the Virginia State Bar initiated disciplinary proceedings against Mr. Flynn. Mr. Flynn did not contest any of the allegations raised by the bar and he surrendered his license to practice law.

In addition to the loss of his career and livelihood, Mr. Flynn has suffered embarrassment and ridicule in the both the legal community and the community at large. The family, friends, business associates, and fellow attorneys who know Mr. Flynn the best, however, know that although Mr. Flynn's conduct was reprehensible, it was not in line with his true character. This Court has the benefit of numerous letters

7

written on Mr. Flynn's behalf, which detail Mr. Flynn's true character and paint a complete picture of Mr. Flynn as a whole person.

Those who know him best uniformly describe David Flynn as a person who is compassionate and giving to a fault, and the kind of person that anyone would be proud to call their mentor, friend, brother, father, or son.  Clearly, Mr. Flynn has had numerous advantages in his life, including the benefits of wonderful family and a top-notch education.  Despite all of the advantages and opportunities Mr. Flynn had, he has never taken any of them for granted and he has always worked extremely hard—whether it was in sports, academics, or his career —to achieve at the highest levels.  Likewise, Mr. Flynn has never failed to take the opportunity to lend a hand and assist a person in need.  Mr. Flynn is well known for his generosity and selflessness when it comes to the needs of others.  The letters submitted to the Court contain numerous examples of his willingness to lend support or assistance, be it financial, emotional, or otherwise, and they speak volumes about his true character.

In considering Mr. Flynn's character, this Court must also consider the actions that Mr. Flynn has taken since the time federal agents informed him of their investigation.  Upon learning that he was the target of a federal investigation, Mr. Flynn immediately returned to Virginia and began cooperating with authorities.  Over the past year, Mr. Flynn met with federal agents on numerous occasions to provide details and documents to further their investigation.  In addition to hours of interviews, Mr. Flynn spent countless hours reviewing his personal files and records as well as the files and records of his law firm to gather documents for federal investigators.

Mr. Flynn's assistance in his own prosecution has been nothing short of exemplary and he has demonstrated a level of acceptance of responsibility far and away above that of the typical defendant. Mr. Flynn has also taken steps to ensure that restitution in the amount of $26,406.81 was paid to Robert and Emma Moyers. The Moyers were the only individual victims not compensated by First American Title Insurance Company and Mr. Flynn made it his personal mission to ensure that they were paid in full prior to his incarceration.

Mr. Flynn realizes that the attributes described above, while commendable, cannot make up for his role in these crimes and he understands that he will not avoid serious punishment. Mr. Flynn has expressed many times throughout this past year how deeply concerned he is about how his incarceration will affect his family and how devastated he is at he very real prospect that he may never again see his parents as a free man. Mr. Flynn has expressed heartfelt regret for the pain his actions have caused his family and all of the people who trusted him with their business. He simply asks that the Court consider all of these mitigating factors when crafting its sentence.

### The Need for the Sentence Imposed to Reflect the Seriousness of the Offense Promote Respect for the Law, to Provide Just Punishment and to Afford Adequate Deterrence to Criminal Conduct

Mr. Flynn certainly understands the seriousness of these offenses and the and the far-reaching harm that resulted from his actions. Obviously, for a man of Mr. Flynn's background and education, the fact of the felony conviction in and of itself signifies a significant punishment. For many years, David Flynn was a successful and well-respected attorney. As a result of his actions and felony conviction, he will never

again work in his chosen profession and he will always carry with him the stigma of being a convicted felon who stole from his own clients. In this case, the felony conviction itself promotes respect for the law and reflects the seriousness of the offense.

The felony conviction also affords significant deterrence from future criminal conduct. Because of this conviction and the resulting loss of his law license, nearly everything that Mr. Flynn had achieved through his career as an attorney is now little more than a reminder of how far he has fallen because of his actions. In addition to his reputation and good name, Mr. Flynn has lost his license to practice law and with it, the firm he built from the ground up. Mr. Flynn also lost, either through forfeiture or bankruptcy, all of the material things he had worked so hard to maintain, including the house he built with his parents so that he could be with them trough their retirement.

Similarly, Mr. Flynn's personal characteristics all signify that he is a very low risk ever again engage in any type of criminal or fraudulent conduct. Mr. Flynn is a non-violent, first-time felony offender who has demonstrated significant remorse and acceptance of responsibility. In addition, Mr. Flynn is well educated, has a long history of gainful employment, and has a very substantial family support system.

Mr. Flynn also knows that whatever the period of incarceration imposed on him, that it will have a significant impact on his relationship with his family. He will not be around during critical years in his son's life and his parents may not live to see him released from prison. These two realizations, coupled with the harm he caused so many innocent people are Mr. Flynn's greatest regrets. After he is released, Mr. Flynn

10

intends to work tirelessly to repay his victims and to repair and rebuild the relationships with his family.

All of these factors, along with Mr. Flynn's demonstrated commitment to making full restitution for his crime, signify that there is virtually no likelihood that Mr. Flynn will reoffend or violate the terms of his release.  These factors, along with all of Mr. Flynn's characteristics and background also confirm that a below-guidelines sentence is a just punishment and is more than sufficient to deter future unlawful conduct.

## The Need to Provide Mr. Flynn with Educational or Vocational Training, Medical Care, or Other Correctional Treatment

It is obvious that Mr. Flynn has had a serious problem with alcohol abuse for some time.  Mr. Flynn readily admits he has battled alcohol addiction for many years. He has twice been convicted of driving under the influence and many of the letters written on his behalf mention Mr. Flynn's struggles with alcohol.  Mr. Flynn wishes to seek treatment for his alcohol abuse and requests that the Court recommend him for the Residential Drug Treatment Program within the Bureau of Prisons.

## The Need to Provide Restitution

Despite the substantial amount of loss in this case, Mr. Flynn is dedicated to working towards paying his restitution upon his release from custody.

## The Sentencing Range Established for the Offense

The Pre-sentence Report sets forth a total offense level of 27 and criminal history category of II.  The resulting guideline range is 78-97 months.  The government has submitted that it feels a sentence of 87 months is warranted in this case.  If the Court

11

sustains Mr. Flynn's objections to the guidelines, the resulting guideline range would be 57-71 months (representing a total offense level of 25 and criminal history category I).

Even the low end of this reduced range represents a sentence much greater than necessary to meet the mandates of § 3553. For these reasons, Mr. Flynn asks that the Court fashion a sentence well below this range.

Finally, Mr. Flynn intends to move the Court to allow him to remain on his current bond for period of 60 days pending his designation to a federal facility by the Bureau of Prisons. There is no benefit to Mr. Flynn or to society, and certainly none of the goals of § 3553 are met by incarcerating Mr. Flynn at a local jail until his designation.

## CONCLUSION

For the reasons set forth above, the Defendant, David R. Flynn , by counsel. respectfully submits that a sentence well below the guideline range, will accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553.

Respectfully submitted,

DAVID R. FLYNN
By Counsel

_____/s/_____
James O. Broccoletti, Esquire
VSB# 17869
Counsel for David R. Flynn
ZOBY & BROCCOLETTI, P.C.
6663 Stoney Point South
Norfolk, VA 23502
(757) 466-0750
(757) 466-5026

12

james@zobybroccoletti.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of November, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Melissa E. O'Boyle, Esquire
Assistant U. S. Attorney
*Office of the United States Attorney*
101 W. Main Street
Suite 8000
Norfolk, VA 23510

_____/s/_____
James O. Broccoletti, Esquire
VSB# 17869
Counsel for David R. Flynn
ZOBY & BROCCOLETTI, P.C.
6663 Stoney Point South
Norfolk, VA 23502
(757) 466-0750
(757) 466-5026
james@zobybroccoletti.com

I hereby certify that on the 10th day of November, 2014, I caused a true and correct copy of the foregoing Motion to be mailed to the following non-filing user:

Leah D, Greathouse
U.S. Probation Officer
600 Granby Street, Suite 200
Norfolk, VA 23510

_____/s/_____
James O. Broccoletti, Esquire
VSB# 17869
Counsel for David R. Flynn
ZOBY & BROCCOLETTI, P.C.

13

6663 Stoney Point South
Norfolk, VA 23502
(757) 466-0750
(757) 466-5026
james@zobybroccoletti.com